**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

|  |  |  |
|---|---|---|
| In re | ) ) | Chapter 11 |
| RECTICEL NORTH AMERICA, INC. | ) ) ) ) | Case No. 09-[          ] |
| In re | ) ) ) | Chapter 11 |
| RECTICEL INTERIORS NORTH AMERICA, LLC | ) ) ) | Case No. 09-[          ] |
| Debtors. | ) ) |  |

**INTERIM FIRST DAY ORDER PURSUANT TO 11 U.S.C. §§ 105, 363, 364(c) AND 364(e), BANKRUPTCY RULE 4001(c) AND LOCAL RULE 4001-2 (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING AND (II) SCHEDULING A FINAL HEARING**

Upon the motion (the "Motion") of Recticel North America, Inc. a/k/a Recticel UREPP North America, Inc. ("RUNA") and Recticel Interiors North America, LLC ("RINA," together with RUNA, the "Debtors" or "Borrowers"), for the entry of interim and final orders (respectively, this "Interim Order" and the "Final Order," and collectively, the "DIP Order"), pursuant to sections 105, 363, 364(c) and 364(e) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), Rule 4001(c) and (d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules of the United States Bankruptcy Court for the Eastern District of Michigan (the "Local Rules") authorizing the Debtors to enter into a senior secured, debtor-in-possession financing facility of up to $500,000 on an interim basis, and up to $10 million upon entry of a Final Order (as amended, modified and otherwise in effect from time to time, the "DIP Credit Facility") as

provided for in that certain Credit Agreement, substantially in the form attached to the Motion as **Exhibit A** (as amended, supplemented, or otherwise modified and in effect from time to time, the "DIP Credit Agreement,"[1] together with any and all other related documents and agreements entered into in connection with or related to the DIP Credit Facility, the "DIP Credit Documents"), seeking, among other things:

    (1) authorization for the Borrowers to obtain secured postpetition financing (the "DIP Financing") consisting of a credit facility in the aggregate principal amount of up to $10 million, subject to the terms and conditions set forth in the DIP Credit Documents and an agreed upon budget (the "Budget"), from Recticel N.V./S.A. (the "DIP Lender"), and for the Debtors to enter into and execute, and perform all of their obligations under the DIP Credit Documents;

    (2) to grant the DIP Lender, pursuant to section 364(c)(2) and (3) of the Bankruptcy Code, senior first priority liens (the "DIP Liens") on all of the Debtors' prepetition and postpetition assets and property of any kind or nature, and all products and proceeds thereof, subject only to (i) any valid, perfected, enforceable and non-avoidable security interest or lien in existence as of the Petition Date, (ii) any valid, enforceable and non-avoidable lien perfected (but not granted) after the Petition Date to the extent such perfection in respect of a prepetition claim is expressly permitted under the Bankruptcy Code, (iii) the Carve-Out and (iv) any liens and security interests (as such terms are defined in

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the DIP Credit Agreement or the Motion, as applicable.

section 101 of the Bankruptcy Code) expressly permitted to be senior under the DIP Credit Documents and the terms of the DIP Order;

(3) to grant the DIP Lender, pursuant to section 364(c)(1) of the Bankruptcy Code, a superpriority administrative expense claim (the "Superpriority Claim") to the DIP Lender, which, as set forth in paragraph 8, shall have priority over any or all administrative expenses in the above-captioned chapter 11 cases (the "Cases") and shall be payable from and having recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof, subject only to the payment of the Carve-Out;

(4) a preliminary hearing (the "Preliminary Hearing") on the Motion to consider the entry of an Interim Order pursuant to Bankruptcy Rule 4001 authorizing the Debtors, inter alia, to utilize the Financing for up to an aggregate of $500,000 upon the terms and conditions set forth in the DIP Credit Documents and the Interim Order and subject to the Budget, pending the Final Hearing referred to below;

(5) modification by the Court of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Credit Facility, this Interim Order, the DIP Credit Agreement and the other DIP Credit Documents;

(6) a final hearing (the "Final Hearing"), and the establishment of notice procedures in respect of the Final Hearing, to consider entry of a Final Order authorizing, inter alia, the DIP Financing; and

3

(7) the Court's waiving of any applicable stay (including under Bankruptcy Rule 6004) and providing for the immediate effectiveness of this Interim Order.

The Court having considered the Motion, the terms of the DIP Financing and the DIP Credit Documents, the Declaration of Derek Strehl in Support of the First Day Motions, dated as of October 29, 2009, and the evidence submitted at the Preliminary Hearing held before this Court on [_____], 2009, to consider entry of this Interim Order; and in accordance with Bankruptcy Rules 2002 and 4001(c), and the local rules of the Court, due and proper notice of the Motion and the Preliminary Hearing having been given; and it appearing that approval of the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors pending the Final Hearing and is otherwise fair and reasonable and in the best interests of the Debtors, their creditors and their estates, and essential for the continued operation of the Debtors' businesses; and all objections, if any, to the entry of this Interim Order having been withdrawn, resolved or overruled by the Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefore;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1. The Debtors duly commenced these Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code on October 29, 2009 in the United States Bankruptcy Court for the Eastern District of Michigan (the "<u>Court</u>").

2. The Debtors are operating their business and managing their affairs as debtors and debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these Cases.

3. *Jurisdiction and Venue*. This Court has core jurisdiction over the Cases, the Motion, the documents and agreements referred to herein, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4. *Notice*. The notice given by the Debtors of the Motion, the relief requested therein and the Preliminary Hearing to the Office of the United States Trustee for the Eastern District of Michigan, the Debtor's 30 largest unsecured creditors on a consolidated basis (including counsel if known), counsel to the DIP Lender, and all parties requesting notices pursuant to Bankruptcy Rule 2002, constitutes due and sufficient notice thereof and complies with Bankruptcy Rule 4001(c).

5. *Findings Regarding the Financing*.

    (a) Good cause has been shown for the entry of this Order.

    (b) The Debtors have an immediate need to obtain the DIP Financing to permit, among other things, the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers and customers, to make payroll, to make capital expenditures, and to satisfy other working capital and operational needs. The access of the Debtors to sufficient working capital and liquidity through the incurrence of new indebtedness for borrowed money and other financial accommodations is vital to the preservation and maintenance of the going concern values of the Debtors and to a successful reorganization of the Debtors. In the absence of the DIP Financing, the continued operation of the Debtors' businesses would not be possible, and immediate and irreparable harm to the Debtors and their estates would occur.

5

09-73411-pjs    Doc 13-3    Filed 10/29/09    Entered 10/29/09 17:51:05    Page 5 of 18

(c) The Debtors have been unable to obtain financing on more favorable terms from sources other than the DIP Lender under the DIP Credit Documents and have been unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. Given the current capital markets environment, alternative financing may not be available to the Debtors at all and is unlikely to be available on terms more favorable than set forth in the DIP Credit Documents.

(d) The terms of the DIP Financing are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(e) The DIP Financing has been negotiated in good faith and at arm's length among the Debtors and the DIP Lender, and all of the Debtors' obligations and indebtedness arising under, in respect of or in connection with the DIP Financing and the DIP Credit Documents shall be deemed to have been extended by the DIP Lender in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code.

6. *Motion Granted.* The Motion is granted in accordance with the terms and conditions set forth in this Interim Order and the DIP Credit Documents. Any objections to the Motion with respect to entry of this Interim Order to the extent not withdrawn, waived or otherwise resolved, and all reservation of rights included therein, are hereby overruled.

7. *Authorization of the DIP Financing and the DIP Credit Documents.*

(a) The Debtors are hereby expressly authorized and empowered to execute and deliver the DIP Credit Documents. The Debtors are authorized to comply with and perform all

6

09-73411-pjs    Doc 13-3    Filed 10/29/09    Entered 10/29/09 17:51:05    Page 6 of 18

of the terms and conditions contained in the DIP Credit Documents, and the Debtors are directed to repay amounts borrowed with interest to the DIP Lender in accordance with and subject to the terms and conditions set forth in the DIP Credit Documents and this Interim Order. All loans made under the DIP Credit Agreement (the "DIP Loans") and interest thereon, and all fees, costs, expenses, indebtedness, obligations and liabilities of the Debtors to the DIP Lender under the DIP Credit Documents and this Interim Order, including all indemnification and similar obligations and liabilities, are hereinafter referred to as the "DIP Obligations."

(b) Pending the Final Hearing, the Debtors are expressly authorized to obtain DIP Loans from the DIP Lender in the aggregate principal amount up to $500,000 (plus interest, fees and other expenses and amounts provided for in the DIP Credit Documents), in accordance with the terms of this Interim Order and the DIP Credit Documents, which may be used in accordance with the Budget and for all purposes not prohibited under the DIP Credit Documents, including, without limitation, to provide working capital for the Borrowers, to pay interest, fees and expenses in accordance with this Interim Order and the DIP Credit Documents and any other payments permitted by the Court to be made until the date that this Order becomes a Final Order.

8. *Superpriority Claims.* In accordance to section 364(c)(1) of the Bankruptcy Code, subject only to the Carve-Out, all of the DIP Obligations shall constitute allowed claims against the Debtors with priority in payment over any and all administrative expenses (the "Superpriority Claims") of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, but not limited to, sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b) of the Bankruptcy Code and in accordance with section 726 of the Bankruptcy Code, and shall at all times be senior to the rights of the Debtors, and any successor trustee or

any creditor, in the Cases or any subsequent proceedings under the Bankruptcy Code. Subject only to the Carve-Out, no cost or expense of administration under sections 105, 364(c)(1), 503(b), 506(c), 507(b) of the Bankruptcy Code or otherwise, including those resulting from the conversion of the Cases pursuant to section 1112 of the Bankruptcy Code, shall be senior to, or pari passu with, the Superpriority Claims of the DIP Lender.

9. *DIP Liens*. As security for the DIP Obligations and subject only to the Carve-Out, the DIP Lender shall have and is hereby granted (effective upon the date of this Interim Order and without the necessity of the execution, recordation of filings by the Debtors or the DIP Lender of any mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents) the DIP Liens, which constitute valid and perfected, security interests in, and liens upon, all now owned or hereafter acquired assets and property, whether real or personal, of the Debtors including, without limitation, all assets and property pledged under the DIP Credit Documents, and all cash, any investment of such cash, inventory, accounts receivable, including intercompany accounts (and all rights associated therewith), other rights to payment whether arising before or after the Petition Date, contracts, contract rights, chattel paper, goods, investment property, inventory, deposit accounts, "core concentration accounts," "cash collateral accounts", and in each case all amounts on deposit therein from time to time, equity interests, securities accounts, securities entitlements, securities, commercial tort claims, books, records, plants, equipment, general intangibles, documents, instruments, interests in leases and leaseholds, interests in real property, fixtures, payment intangibles, tax or other refunds, insurance proceeds, letters of credit, letter of credit rights, supporting obligations, machinery and equipment, patents, copyrights, trademarks, trade names, other intellectual

8

property, all licenses therefor, and all proceeds, rents, profits, products and substitutions, if any, of any of the foregoing, and including, upon entry of the Final Order, all of the Debtors' claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code, and any other avoidance or similar action under the Bankruptcy Code or similar state law, and the proceeds thereof, whether received by judgment, settlement or otherwise (collectively with all proceeds and products of any or all of the foregoing, the "DIP Collateral") as follows:

(a) <u>First Lien on Unencumbered Property</u>. Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior lien upon all of the Debtors' right, title and interest in, to and under all DIP Collateral that is not otherwise encumbered by a valid, perfected, enforceable and non-avoidable security interest or lien as of the Petition Date; and

(b) <u>Liens Junior to Certain Other Liens</u>. Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected and non-avoidable lien upon all of the DIP Collateral which is subject to (i) any valid, perfected, enforceable and non-avoidable security interest or lien in existence as of the Petition Date, or (ii) any valid, enforceable and non-avoidable lien perfected (but not granted) after the Petition Date to the extent such perfection in respect of a prepetition claim is expressly permitted under the Bankruptcy Code or (iii) any Permitted Lien (as defined in the DIP Credit Agreement) and which is expressly permitted in the DIP Credit Agreement to be senior to the DIP Liens.

(c) <u>Liens Senior to Certain Other Liens</u>. Except as set forth herein, the DIP Liens shall be prior and senior to all liens and encumbrances of all other secured creditors, if any,

9

in and to such DIP Collateral granted, or arising after the Petition Date (including, without limitation, liens and security interests, if any, granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtor).

10. *Carve-Out*. The Debtors' obligations to the DIP Lender and the DIP Liens and Superpriority Claim granted herein shall be subject and subordinate only to, after a Carve-Out Effective Date (defined below), payment of the Carve-Out. For purposes of this Order, "Carve-Out" shall mean (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a); (ii) subject to the terms of this Interim Order and the Budget, all allowed fees and expenses of the professionals retained under section 327 and 328 of the Bankruptcy Code or otherwise by the Debtors accrued or incurred on or before the first business day (the "Carve-Out Effective Date") following the delivery by the DIP Lender of a Default Notice (as defined below), whether approved by the Bankruptcy Court before or after the Carve-Out Effective Date; and (iii) on and after the Carve-Out Effective Date, an amount not exceeding $350,000 in the aggregate, which amount may be used (subject to the terms of this Interim Order and the Budget) to pay any allowed fees or expenses incurred by the professionals retained under sections 327 or 328 of the Bankruptcy Code by the Debtors and statutory committee appointed in the Cases, on or after the Carve-Out Effective Date, *provided* that (x) the dollar limitation in this clause (iii) on fees and expenses shall neither be reduced nor increased by the amount of any compensation or reimbursement of expenses incurred, awarded or paid on or prior to the Carve-Out Effective Date in respect of which the Carve-Out is invoked or by any fees, expenses, indemnities or other amounts paid to the DIP Lender (or its attorneys or agents under the DIP Credit Facility or otherwise), and (y)

nothing herein shall be construed to impair the ability of any entity to object to the fees, expenses, reimbursement or compensation described above. "<u>Default Notice</u>" means a written notice delivered by the DIP Lender to the Borrowers and their counsel, the U.S. Trustee, and counsel to any statutory committee appointed in the Cases, which notice may be delivered following the occurrence and during the occurrence of an Event of Default, expressly stating that it is a Default Notice hereunder. No portion of the Carve-Out and no proceeds of the DIP Credit Facility or the DIP Loans may be used for the payment of the fees and expenses of any person incurred (i) in challenging, or in relation to the challenge of, any of the DIP Lender's liens or claims (or the value of its DIP Collateral), or the initiation or prosecution of any claim or action against the DIP Lender, including any claim under chapter 5 of the Bankruptcy Code, or any state law or foreign law, in respect of the DIP Credit Facility, or in preventing, hindering or delaying the realization by the DIP Lender upon any DIP Collateral, respectively, or the enforcement of its rights under the DIP Credit Facility, this Interim Order, the Final Order, the DIP Credit Agreement or any other DIP Credit Document, (ii) in requesting authorization, or supporting any request for authorization, to obtain postpetition financing (whether equity or debt) or other financial accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code, or otherwise, other than from the DIP Lender or (iii) in connection with any claims or causes of actions against the DIP Lender, including formal or informal discovery proceedings in anticipation thereof, and/or in challenging any DIP Obligations or the DIP Liens.

11. *Limitation on Charging Expenses Against Collateral*. Subject to the entry of the Final Order, as a further condition of the DIP Credit Facility and any obligation of the DIP Lender to make DIP Loans, the Debtors (and any successors thereto or any representatives

11

thereof, including any trustees appointed in the Cases or any successor cases) shall be deemed to have waived any rights, benefits, or causes of action under section 506(c) of the Bankruptcy Code as they may relate to or be asserted against the DIP Lender, the DIP Liens or the DIP Collateral. Nothing contained in this Interim Order, in the Final Order, in the DIP Credit Agreement or in the other DIP Credit Documents shall be deemed a consent by the DIP Lender to any charge, lien, assessment or claim against, or in respect of, the DIP Collateral under section 506(c) of the Bankruptcy Code or otherwise.

12. *Perfection of DIP Liens.* The DIP Liens granted pursuant to this Interim Order (and any Final Order and any DIP Credit Document) shall constitute valid and duly perfected security interests and liens, and the DIP Lender shall not be required to file or serve financing statements, notices of lien or similar instruments which otherwise may be required under federal or state law in any jurisdiction, record leasehold mortgages, or take any action, including taking possession, to validate and perfect such security interests and liens; and the failure by the DIP Lender to take any of the foregoing or similar actions or the failure by the Debtors to execute any documentation relating to the DIP Liens shall in no way affect the validity, perfection or priority of such DIP Liens. If, however, the DIP Lender, in its sole discretion, shall determine to file any such financing statement, notices of liens or similar instruments, record leasehold mortgages, or to otherwise confirm perfection of such DIP Liens, the Debtors are directed to cooperate with and assist in such process, the stay imposed by Bankruptcy Code section 362(a) is hereby lifted to allow the filing and recording of a certified copy of this Interim Order or any such financing statements, notices of lien or similar instruments, and all such documents shall be deemed to have been filed or recorded at the time of and on the date of this Order.

13. *Limitation on Release.* Effective upon entry of the Final Order, the DIP Lender is hereby released and discharged from any and all claims and causes of action of the Debtors arising prior to the Petition Date; except to the extent (a) a party in interest has properly filed an adversary proceeding or contested matter asserting any claims or causes of action against the DIP Lender and such adversary proceeding or contested matter is filed no later than the date that is sixty (60) days after the earlier of (i) the date of appointment of a statutory committee or (ii) entry of the Final Order, and (b) the Court rules (whether prior to or after such sixty (60) day period) in favor of the plaintiff in any such adversary proceeding or contested matter properly filed within such sixty (60) day period.

14. *Proof of Claim.* The DIP Lender will not be required, as a condition to repayment of the DIP Obligations or to assert its rights under the DIP Credit Documents, to file a proof of claim in the Cases or upon the conversion of the Cases to cases under chapter 7 of the Bankruptcy Code, appointment of a trustee, or in any other proceedings related to any of the foregoing.

15. *Event of Default.* Upon the occurrence of and during the continuation of an Event of Default (as defined in the DIP Credit Agreement), the DIP Lender may, by notice to the Debtors, the U.S. Trustee and any statutory committees appointed in the Cases, take all or any of the following actions: (i) terminate the DIP Financing and thereafter cease to make DIP Loans to the Debtors (the date of any such termination, the "Termination Date"); (ii) declare the DIP Loans then outstanding and all other DIP Obligations hereunder to be forthwith due and payable, whereupon the principal of the DIP Loans together with accrued interest thereon and all other DIP Obligations of the Borrowers accrued hereunder and under any other DIP Credit Document,

shall become forthwith due and payable, without presentment, demand, protest or any other notice of any kind, all of which are hereby expressly waived by the Borrowers, anything contained herein or in any other DIP Credit Document to the contrary notwithstanding; and (iii) exercise any and all remedies under the DIP Credit Documents and under applicable law available to the DIP Lender. The Debtors waive any right to seek relief under the Bankruptcy Code, including without limitations, under section 105 of the Bankruptcy Code, to the extent any such relief would in any way restrict or impair the rights and remedies of the DIP Lender set forth in this Order and in the DIP Credit Documents. All proceeds of the DIP Collateral and any other payments received by the DIP Lender, after the Termination Date or pursuant to the exercise of any such rights and remedies upon the occurrence and during the continuance of an Event of Default, shall be applied to the DIP Obligations in the manner set forth in the DIP Credit Documents. The automatic stay of section 362(a) is hereby modified to allow the DIP Lender to take any and all of the foregoing actions.

16. *Authorization to Effectuate Terms of the DIP Credit Documents*. The Debtors are authorized and directed to perform all acts, and execute and comply with the terms of such other documents, instruments and agreements in addition to the DIP Credit Documents, as the DIP Lender may reasonably require, as evidence of and for the protection of the DIP Obligations, or which otherwise may be deemed reasonably necessary by the DIP Lender to effectuate the terms and conditions of this Interim Order and the DIP Credit Documents, as the case may be. The Debtors and the DIP Lender are hereby authorized and directed to implement, in accordance with the terms of the DIP Credit Agreement, any non-material modifications of the DIP Credit Agreement without further order of this Court.

14

17.  *Good Faith under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Interim Order.*  Based on the findings set forth in this Interim Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the DIP Credit Facility as approved by this Interim Order, in the event any or all of the provisions of this Interim Order are hereafter modified, amended or vacated by a subsequent order of this Court or any other court, the DIP Lender is entitled to the protections provided in section 364(e) of the Bankruptcy Code, and no such appeal, modification, amendment or vacation shall affect the validity and enforceability of any advances made hereunder or the liens or priority authorized or created hereby.  Notwithstanding any such modification, amendment or vacation, any claim granted to the DIP Lender hereunder arising prior to the effective date of such modification, amendment or vacation of any DIP Liens or of the Superpriority Claim granted to or for the benefit of the DIP Lender shall be governed in all respects by the original provisions of this Interim Order, and the DIP Lender shall be entitled to all of the rights, remedies, privileges and benefits, including the DIP Liens and the Superpriority Claim granted herein, with respect to any such claim.  Because the DIP Loans are made in reliance on this Interim Order, the DIP Obligations incurred by the Debtors or owed the DIP Lender prior to the effective date of any stay, modification or vacation of this Interim Order shall not, as a result of any subsequent order in the Cases or in any successor cases, be subordinated, lose their lien priority or superpriority administrative expense claim status, or be deprived of the benefit of the status of the liens and claims granted to the DIP Lender under this Interim Order.

18.  *Survival of the Interim Order*.  The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (i)

15

confirming any plan in the Cases, (ii) converting any of the Cases to a case under chapter 7 of the Bankruptcy Code, (iii) to the extent authorized by applicable law, dismissing any of the Cases, (iv) withdrawing of the reference of any of the Cases from this Court or (v) providing for abstention from handling or retaining of jurisdiction of any of the Cases in this Court. The terms and provisions of this Interim Order, including the DIP Liens and Superpriority Claim granted pursuant to this Interim Order, shall continue in full force and effect notwithstanding the entry of such order, and such DIP Liens and Superpriority Claim shall maintain their priority as provided by this Interim Order and the DIP Credit Documents, until all of the DIP Obligations have been indefeasibly paid and satisfied in full in cash and discharged.

19.  *No Waiver.*  The failure of the DIP Lender to seek relief or otherwise exercise its rights and remedies under this Interim Order or the DIP Credit Documents or otherwise, shall not constitute a waiver of any of the DIP Lender's rights hereunder, thereunder, or otherwise. Notwithstanding anything herein, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair any of the rights, claims, privileges, objections, defenses or remedies of the DIP Lender under the Bankruptcy Code or under non-bankruptcy law against any other person or entity in any court, including without limitation, the rights of the DIP Lender (i) to request conversion of the Cases to cases under chapter 7 of the Bankruptcy Code, dismissal of the Cases, or the appointment of a trustee in the Cases, or (ii) to propose, subject to the provisions of section 1121 of the Bankruptcy Code, a plan, or (iii) to exercise any such rights, claims or privileges (whether legal, equitable or otherwise).

16

20. *No Third Party Rights*. Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, third party or incidental beneficiary.

21. *No Marshaling*. The DIP Lender shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral.

22. *Amendment*. Except as otherwise provided herein, no waiver, modification, or amendment of any of the provisions hereof shall be effective unless set forth in writing, signed by, or on behalf of, all the Debtors and the DIP Lender, and approved by the Court after notice to parties in interest.

23. *Enforceability*. This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.

24. *No Waivers or Modification of Interim Order*. The Debtors irrevocably waive any right to seek any modification or extension of this Interim Order without the prior written consent of the DIP Lender, and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Lender.

25. *Order Governs*. In the event of any inconsistency between the provisions of this Interim Order and the DIP Credit Documents, the provisions of this Interim Order shall govern. This Court shall, and hereby does, retain jurisdiction with respect to all matters arising from or related to the implementation and interpretation of this Interim Order.

26. *Binding Effect; Successors and Assigns*. The DIP Credit Documents and the provisions of this Interim Order, including all findings herein, shall be binding upon all parties in

17

interest in this Cases, including, without limitation, the DIP Lender and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estates of the Debtors) and shall inure to the benefit the DIP Lender and the Debtors and their respective successors and assigns, *provided*, *however*, that the DIP Lender shall have no obligation to extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.

27. *Final Hearing.* A final hearing on the Motion, pursuant to Bankruptcy Rule 4001, shall be held by the Court on _____ \_\_, 2009 at \_\_\_\_ \_.m. at the United States Bankruptcy Court for the Eastern District of Michigan.

28. *Service of the Order.* Within 24 hours of this Interim Order's entry, the Debtors shall serve a copy of this Interim Order (including notice of the date, time and place of the Final Hearing), the Motion and the exhibits attached to the Motion on the Office of the United States Trustee for the Eastern District of Michigan, the Debtors' 30 largest unsecured creditors on a consolidated basis (including counsel if known), counsel to the DIP Lender, and all parties requesting notices pursuant to Bankruptcy Rule 2002, as required by Bankruptcy Rule 4001(d).

29. *Local Rule Provisions.* Objections, if any, to this Interim Order shall be filed 15 days from the entry of the Interim Order, except that an official committee may file objections within 15 days after it is served with the Interim Order. If an objection is timely filed, the Final Hearing will be held. If no objection is timely filed, this Interim Order will become the Final Order.

18

09-73411-pjs    Doc 13-3    Filed 10/29/09    Entered 10/29/09 17:51:05    Page 18 of 18